Roy M. HENRY and Lawrence Henry, Plaintiffs in Error,

v.

IONIC PETROLEUM COMPANY, a corporation, and Jack B. Sellers, Defendants in Error.

No. 39914.

Supreme Court of Oklahoma.

Feb. 18, 1964.

Rehearing Denied April 28, 1964.

Young, Young, & Young, Sapulpa, for plaintiffs in error.

Jack B. Sellers, Sapulpa, Boatman, Pugsley & Boatman, Okmulgee, for defendants in error.

JOHNSON, Justice.

The defendants in error, Ionic Petroleum Company, a corporation, and Jack B. Sellers, individually, hereafter referred to as plaintiffs, sued the plaintiffs in error, Roy M. Henry and Lawrence Henry, hereafter referred to as defendants, in the District Court of Okmulgee County, Oklahoma.

The petition alleged that plaintiffs are the joint owners of oil and gas leases located in the NW¼, and the E½ of SW¼, all in Sec. 20, T 15 N, R 13 E, and in the SW¼ of NW¼, and NW¼ of NW¼ of NE¼ of NW¼, and the NW¼ of NW¼ of Sec. 24, T 15 N, R 12 E, Okmulgee County, Oklahoma. The petition alleged that the defendants have blocked the road leading to such producing leases. The action seeks an injunction against such interference with ingress and egress. There are numerous other allegations in the amended petition, but the heart of the action is as set out above.

To this petition a general denial was filed by Lawrence Henry, and in addition thereto he alleged ownership of the surface of the SE¼ of NE¼ and NE¼ of SE¼ of Sec. 19, T 15 N, R 13 E, Okmulgee County, under which plaintiffs own no minerals and upon which there is no oil lease, and that plaintiffs are trespassers. While the rec-

ord discloses certain motions of the defendant Roy Henry, there is no answer by this defendant.

Upon this record trial was had and judgment rendered in favor of plaintiffs enjoining interference with the road in question.

The sole question involved is the right of plaintiffs to use the road in question.

Any land upon which oil leases exist need not be considered in this controversy for the reason that the oil lease carries with it the right for ingress and egress across all lands covered by the leases. Therefore, our inquiry need only concern the roadway across Section 19 upon which the plaintiffs did not hold an oil lease. This is the tract of which the surface is vested in Lawrence Henry.

In regard to this tract, the record establishes that a right-of-way easement was granted in 1947 by the owner of this tract. That subsequent to the granting of this right-of-way contact was made with the county commissioners by the grantee of the easement in connection with the construction, the use of this road by the public and the maintenance by the county. The evidence shows that the road was constructed and maintained by the county over a period of time and was used by the public. The location or use of the road was not objected to by the owner. The question then resolves itself into a determination of what constitues a dedication and acceptance of a highway.

Before looking at the evidence, the rules of law applicable should first be determined. In regard to dedication, we have laid down the following principles.

▆▆▆ In the case of Williamson v. Needles, 191 Okl. 560, 133 P.2d 211, the first paragraph of the syllabus by the court reads:

"Dedications of land for public purposes are of two kinds: First, statutory; and, second, implied or dedications at common law. All that is required to make an implied dedication is the assent of the owner and the use

of the premises for the purposes intended by the dedication, for the reason that the law considers the acts of the owner as an estoppel in pais, and precludes him from revoking the dedication. So, where land is platted into streets, lots, and blocks, and the lots are sold according to the plat, the dedication is complete as a common-law or implied dedication, although some of the requirements of the statute have not been observed."

In the body of the opinion, we find the following:

" 'In Morgan v. Railway Co., 96 U.S. 723, 24 L.Ed. 743, the court says:

" ' "All that is required (to make a valid dedication) is the assent of the owner and the use of the premises for the purposes intended by the appropriation. The law considers the owner's acts and declarations as in the nature of an estoppel in pais, and precludes him from revoking the dedication." ' See, also, Moore v. Adams, 200 Ark. 810, 141 S.W.2d 46."

Again, in the case of Board of County Commissioners of Oklahoma County v. Brown et al., Okl., 287 P.2d 917, the first paragraph of the syllabus by the court reads:

"To constitute a dedication of land, or an easement therein, to the public, two things are necessary: An intention by the owner clearly indicated in words or acts to dedicate the land to the public use; and an effective acceptance of the dedication by or for the public, by reliance being placed thereon, or by user, or otherwise."

Not only does the above rule set out the requirements for dedication but also covers the required acceptance about which we shall have more to say herein.

In the opinion this court said:

"The rule as stated in Niles v. City of Los Angeles, 125 Cal. 572, 58 P. 190, 192, and adopted with approval by this court in City of Tulsa v. Aaron-

son, 103 Okl. 159, 229 P. 596, is as follows:

"'To constitute a dedication of land to the public, two things are necessary, to wit: An intention by the owner, clearly indicated by his words or acts, to dedicate the land to public use; and an acceptance by the public of the dedication.'"

The same rule is followed in Kee v. Satterfield, 46 Okl. 660, 149 P. 243.

Of course, it is essential in an implied dedication that there be an acceptance of the dedication by the proper authorities before same becomes effective. See Oklahoma City v. State ex rel. Williamson, 185 Okl. 219, 90 P.2d 1064.

It will be noted that the syllabus quoted supra from the case of Board of County Commissioners of Oklahoma County v. Brown concludes with this language:

"* * * and an effective acceptance of the dedication by or for the public, *by reliance being placed thereon, or by user, or otherwise."* (Emphasis ours.)

In 16 Am.Jur., Sec. 33, page 380, dealing with dedication, the concluding sentence of such section reads:

"* * * Generally speaking, however, official acceptance may consist in any positive conduct of the proper public officers evincing their consent on behalf of the public."

See also Sec. 34 of 16 Am.Jur. at page 381.

Applying these principles to the present case, we find that the trial court made its findings of fact concerning this phase as follows:

"2. That in 1947, one Ed Wright was the owner of several hundred acres of land in the area, and established a 'Dude Ranch' thereon for the general public. He gave such 'Dude Ranch' wide publicity.

"3. That in order to procure an entranceway to said area, the said Ed Wright purchased a roadway easement from the then owner over and across the NE/4 of the SE/4 and the SE/4 of the NE/4 of Section 19, Township 15 North, Range 13 East.

"4. That the said Ed Wright actually and in fact dedicated said roadway to the public and the County Commissioners of Okmulgee County accepted the same and constructed a roadway thereon at public expense and have subsequently done maintenance work thereon for the use and benefit of the users thereof, and that said roadway has been in general use by the public since its construction in 1947."

The only question necessary to answer herein is whether these findings were sustained by the evidence. As to the dedication, the then owner of the property, Ed Wright, testified as follows:

"Q. Will you tell us why it is necessary to leave the section line?

"A. The County Commissioner agreed to build the road for us up to the ranch provided I make it a public road because other people owned property in there other than myself. We started up the section line. When we got so far the rock was prohibitive in cost to continue up the section line. So, I got an easement from a negro, I forget her name now—who owned it to veer off so we could complete the road. And, it was completed by the county.

"Q. (By Mr. Boatman) I will ask you —I will ask you whether or not what use was made of this road from the time it was build in '47 until you sold out in '56 and left up there? How was it used? By the public generally?

"A. Well, anybody that wanted to use it, used it. Anton Comphaver used it to haul stuff out of there. He had land back in there. And Okmar used it. Wolf hunters used it.

"Q. They would come up in those hills?

"A. Yes.

"Q. Anybody that had business or wanted to come into the hills used it?

"A. That is right.

"Q. Was there ever any restriction put on the use of it during the time you were there?

"A. No. I had an agreement with the commissioner to make it a public road. I put cattle guards on those gates."

So the first requirement of the rule is met. We come now to the acceptance. In regard to the matter of acceptance, the testimony of one of the defendants, Roy Henry, is sufficient to sustain this element. He said:

"Q. And, now, after you bought that in '56, did the county do some work on it right after that repairing it?

"A. Yes.

"Q. Made it so you could go up and down?

"A. They did.

"Q. Then, continued to drag it occasionally?

"A. Yes. I spent—I paid about $1,500.00 taxes too.

"Q. They have then drug the road and done some maintenance ever since you have been there?

"A. Yes.

"Q. And, they are still dragging it occasionally?

"A. Once in a while."

The findings of the trial court in regard to dedication and acceptance of this area are sustained by the evidence.

■ Point is made that the dedication above discussed was made by a holder of an easement and not by the landowner. The record fails to disclose any objection by the landowner from the date of the construction of the road until the conveyance to the present owner (approximately eleven years). Having thus failed to object to both the construction and maintenance over this period of time, she was thereafter estopped to question the dedication after witnessing the expenditures made by the county. The present owner could acquire no greater rights than his grantor and therefore stands in the same position.

We can only conclude that the record is sufficient to clearly show a dedication of the roadway for public purposes by all the parties necessary to make such dedication.

The remainder of this road lies in Sections 20 and 24, the area upon which plaintiffs hold oil and gas leases. As heretofore stated, these carry with them the right of ingress and egress, and therefore this portion of the road is not subject to objection herein. See Wilcox Oil Co. v. Lawson, Okl., 301 P.2d 686.

The judgment of the trial court is affirmed.