2007 OK CIV APP 57

**Bill BOWEN and Mary Jo Bowen, Plaintiffs/Appellees,**

v.

**Billy Jack TUCKER, Gary Joe Tucker, Donna Sue Tucker, Charlie F. Tucker, and Sandra Delores Tucker, Defendants/Appellants.**

No. 101877.

Court of Civil Appeals of Oklahoma, Division No. 2.

May 31, 2007.

---

Bill J. Nunn, Stigler, OK, for Plaintiffs/Appellees.

Brian R. McLaughlin, McLaughlin & Associates, P.C., Stigler, OK, for Defendants/Appellants.

JANE P. WISEMAN, Judge.

¶1 Appellants appeal a trial court order granting Appellees' request for a permanent injunction based on the trial court's finding that the road in dispute is a public road by implied dedication. The injunction prohibits Appellants from interfering with or causing damage to the disputed road and restrains them from interfering with Haskell County's maintenance of the road. Based on our review of the record and applicable law, we find no trial court error and affirm its order.

## FACTS AND PROCEDURAL HISTORY

¶2 Plaintiffs Bill (Bill) and Mary Jo Bowen (Mary Jo) (collectively, the Bowens) filed a petition for injunctive relief and damages[1] requesting the court to determine that a road across and to property owned by the various parties was a county road and therefore open to the public. Defendants Billy Jack Tucker (Billy Jack), Gary Joe Tucker (Gary Joe), and Donna Sue Tucker (Donna Sue) (collectively, the Tuckers)[2] denied that the road was ever dedicated as a county road and asserted that it was a private road over which the Bowens were entitled to an easement.

¶3 The Bowens requested a temporary injunction to prohibit the Tuckers from interfering with the use and maintenance of the road. On November 10, 2003, the trial court held a hearing on the temporary injunction. At the hearing, Mary Jo testified that she wrote a letter to County Commissioner Henry Few (Commissioner Few), requesting that the County perform maintenance on the road. She testified that Bill, Sandra Delores Tucker (Sandra Delores), Charlie F. Tucker (Charlie), Donna Sue, Gary Joe, and Billy Joe Tucker (Billy Joe)[3] all signed the letter she wrote to the County Commissioner. She further testified that in 1986, Billy Joe, Charlie, and Joe Stiles, a County employee, moved the road "a few feet to the north." Sandra Delores testified at the hearing that Billy Joe, Charlie, and Joe Stiles were "the ones that decided where to put the road"

---

1. The Bowens dismissed their claim for nuisance damages at trial, which left the court with only the matter of the permanent injunction.

2. Two other defendants, Charlie F. Tucker and Sandra Delores Tucker, were named in the petition. Charlie F. Tucker was deceased at the time of trial. His wife, Sandra Delores Tucker, although present at the trial, was not present in a position adversarial to the Bowens, and the parties agreed that no real cause of action existed against her.

3. Billy Joe Tucker is the father of Billy Jack and Gary Joe, and he previously owned the property bordering the disputed road.

when it was moved by the County approximately 20 feet north in 1986. When asked who kept up the road after it was moved and upgraded in 1986, she answered:

> The County did. When it was made, we were going to make it a private road and then a little while later ... Sally said, this is—Gary Joe and Bill's [Billy Jack's] mom, she said, it was stupid for Mary to have to bring the girls to catch the bus at the corner. She says, we're going to open it up for the bus to go down there. So, that is what happened. The bus went to Billy Jack's house, picked the girls up and came back out and the County did maintain the road, at that time.[4]

Sandra Delores further testified that she considered the road in 1986 to be a County road all the way down to the Bowens' driveway and so considered it at the present time.

¶ 4 The trial court entered its order granting the Bowens' request for a temporary injunction that prohibited the Tuckers from the following:

> [t]aking any action to damage the Road or creating a condition which increases the likelihood that a natural event, such as a rain or other weather event, would cause damage to the Road; and/or [t]aking any action to stop or otherwise interfere with the maintenance of the Road by the [Bowens] or County Commissioners for Haskell County.

¶ 5 The hearing on the permanent injunction was held on January 14, 2005. Sandra Delores testified at trial that "[t]he County built the road." She further testified that the school bus used the road to pick up Billy Jack's children and that the County periodically worked the road up to the Bowens' residence. Sandra Delores replied in the affirmative when asked whether the public used the road. When specifically asked what she believed to be the status of the road, she stated, "I think it's a County road, myself."

¶ 6 During his testimony at trial, Billy Joe admitted that the County moved the road in 1986 but stated that he "didn't know anything about it until it was already moved."

Testimony at trial from all parties established that the County maintained the road on occasion and did so in 2001 specifically at the request of the Bowens and the Tuckers as evidenced by the letter written by Mary Jo and signed by all of the parties. Commissioner Few testified that the County had maintained the road for at least 6 years—the length of time that he had been commissioner—and it was his understanding from prior commissioners that the County had intermittently maintained the road since it was built in 1986.

¶ 7 At the conclusion of the hearing, the trial court found the road to be a public road by implied dedication, and it entered a permanent injunction prohibiting the Tuckers from damaging the road or interfering with the County's maintenance of the road.

¶ 8 From this order, the Tuckers appeal.

## STANDARD OF REVIEW

¶ 9 When reviewing an order granting injunctive relief, the appellate court will "review the evidence, but will not disturb the trial court's findings and judgment unless found clearly against the weight of the evidence." *McCraw Oil Co. v. Pierce*, 2004 OK CIV APP 7, ¶ 6, 83 P.3d 907, 910; *see also Amoco Prod. Co. v. Lindley*, 1980 OK 6, ¶ 50, 609 P.2d 733, 745. In actions sounding in equity, the trial court determines the credibility of the witnesses as well as the weight and value to be given their testimony. *James v. Board of County Comm'rs of Muskogee*, 1999 OK CIV APP 47, ¶ 7, 978 P.2d 1002, 1003. Even though the evidence would have allowed a different result, we must affirm unless we determine the trial court's decision is clearly against the weight of the evidence. *Id.*

## ANALYSIS

*I. Issues not raised in the trial court*

██ ¶ 10 In their first proposition of error, the Tuckers argue that the statute of frauds should apply because the letter signed by the

---

4. Although 69 O.S.2001 § 601.5 provides that a county can enter private property adjoining a county road in order to maintain or improve a private road when it is used for a school bus turn-around, there is no evidence or argument suggesting this section's applicability in this case.

parties requesting the County to maintain the road was vague and thus did not support the trial court's determination of an implied dedication. The Tuckers' third proposition of error asserts that the implied dedication ruling is contrary to the Oklahoma Constitution and statutes.

■ ¶ 11 The Tuckers failed to raise either a statute of frauds or constitutionality/illegality defense at any point prior to appeal. It is well-established that the appellate court does not make "first-instance determinations of disputed law or fact issues." *Bivins v. State ex rel. Oklahoma Mem'l Hosp.,* 1996 OK 5, ¶ 19, 917 P.2d 456, 464. "That is the trial court's function *in every case*—whether in law, equity or on appeal from an administrative body. Since the [issue] had neither been raised nor assessed at nisi prius, we cannot craft an initial decision upon an *untried question* and then direct that it be followed on remand." *Id.* (footnote omitted). Because the issues of statute of frauds and constitutionality or illegality were not raised in the trial court, they may not be considered for the first time on appeal.

## II. Implied dedication of the road

■ ¶ 12 In their second proposition of error, the Tuckers assert that the trial court did not have "deliberate, decisive, and undoubtful [*sic*] proof" as to the Tuckers' intentions regarding the dedication of the road. We disagree.

■ ¶ 13 Oklahoma case law clearly recognizes two types of dedications of land for public purposes: "First, statutory; and, second, implied or dedications at common law." *Henry v. Ionic Petroleum Co.,* 1964 OK 37, ¶ 9, 391 P.2d 792, 794 (quoting *Williamson v. Needles,* 1942 OK 409, ¶ 0, 133 P.2d 211, 212). We do not discuss the law relevant to statutory dedications in this opinion as there is neither a claim nor evidence that such a dedication was made. Regarding implied dedications, the Oklahoma Supreme Court has stated:

An implied common-law dedication is one arising by operation of law, from the acts of the owner. It may exist without any express grant, and need not be evidenced by any writing, nor, indeed, by any form of words oral or written. It is not founded on a grant, nor does it necessarily presuppose one, but it is founded on the doctrine of equitable estoppel.

*Board of County Comm'rs of Garfield County v. Anderson,* 1934 OK 6, ¶ 36, 29 P.2d 75, 78.

To constitute a dedication of land, or an easement therein, to the public, two things are necessary: An intention by the owner clearly indicated in words or acts to dedicate the land to the public use; and an effective acceptance of the dedication by or for the public, by reliance being placed thereon, or by user, or otherwise.

*Henry,* 1964 OK 37 at ¶ 11, 391 P.2d at 794 (quoting *Board of County Comm'rs of Oklahoma County v. Brown,* 1955 OK 241, 287 P.2d 917).

■ ¶ 14 The Tuckers' acts (and those of their predecessors) clearly indicate their intent to dedicate the land. Testimony revealed that Billy Joe and Charlie worked with the County to determine where to place the new road that the County built. Mary Jo wrote a letter asking the County to maintain the road. This letter requesting the County's services was signed by Bill, Sandra Delores, Charlie, Donna Sue, Gary Joe, and Billy Joe. As stated by the Oklahoma Court of Civil Appeals,

Equity's purpose is to "promote and achieve justice with some degree of flexibility," and requires courts to examine "the particular circumstances of the case." At its most basic, "[e]quitable estoppel is employed to prevent one party from taking a legal position inconsistent with an earlier action that places the other party at a disadvantage." It "holds a person to a representation made, or a position assumed, where otherwise inequitable consequences would result to another, who has in good faith, relied upon that representation or position."

*Harding & Shelton, Inc. v. Prospective Inv. & Trading Co., Ltd.,* 2005 OK CIV APP 88, ¶ 28, 123 P.3d 56, 64 (citations omitted). Equitable estoppel prohibits the Tuckers from asserting a legal position (specifically that the road is a private road and has not been

dedicated to the County) that is inconsistent with their earlier actions.

¶ 15 The County's acts of relocating the road and maintaining it at the County's expense constitute an effective acceptance of the dedication. *See Henry,* 1964 OK 37 at ¶¶ 19–21, 391 P.2d at 796 (sustaining the trial court's finding of an implied dedication where the evidence revealed that the county built the road, maintained the road on occasion and anybody who wanted to use the road used it); *see also Kelly v. City of Bethany,* 1978 OK 163, ¶ 15, 588 P.2d 567, 571 (recognizing that acceptance by a municipality may be evidenced by the "municipality's improving, repairing or other act indicating dominion over the dedicated property"). Once accepted by the County, the Tuckers could no longer revoke the dedication. *See Board of County Comm'rs of Rogers County v. Cottingim,* 1969 OK 5, ¶ 16, 448 P.2d 1014, 1017.

¶ 16 If the County, through one or more of its commissioners, voluntarily expended public funds to relocate a private road 20 feet north of its then location and expended public funds to maintain such a road, this could constitute a violation of the Oklahoma Constitution, art. 10, § 14(A) which states, in pertinent part, "taxes shall be levied and collected by general laws, and for public purposes only." "For public purposes only" in this context has been construed to mean the money "must be expended for the public good." *Orthopedic Hosp. of Oklahoma v. Oklahoma State Dep't of Health,* 2005 OK CIV APP 43, ¶ 7, 118 P.3d 216, 221 (citation omitted).

¶ 17 Such actions may also violate Article 10, Sections 15, 17, and 19 of the Oklahoma Constitution, which prohibit gifts of public monies to individuals (Section 15), appropriations of public money to individuals (Section 17), and using tax revenue collected for one purpose for another purpose (Section 19). The use of county funds and resources to establish, enhance, or maintain purely private property or interests also raises questions under the *qui tam* provisions of 62

O.S.2001 §§ 372–373 which prohibit the unauthorized, unlawful and fraudulent payment or transfer of government money or property. *See State v. Bailey,* 1956 OK 103, 295 P.2d 763. Under the facts presented, the County could lawfully move and maintain this road only if it were a County road open to public use.

¶ 18 When we consider the particular circumstances of this case, the trial court's judgment was not clearly against the weight of the evidence. While the Tuckers, including Billy Joe, their predecessor in interest, deny that they took part in any meeting with the County about where the road should be relocated, other parties to the action, including another defendant, testified to the contrary.

¶ 19 The Tuckers' actions, and those of their predecessors in interest, on which the County and the Bowens relied, contradict their testimony. In equitable matters, such as injunctions, the trial court determines the credibility of the witnesses as well as the weight and value to be given their testimony, and we will not find fault with the trial court's determination unless clearly against the weight of the evidence. *James,* 1999 OK CIV APP 47 at ¶ 7, 978 P.2d at 1003.

## CONCLUSION

¶ 20 The trial court's conclusion in finding that an implied dedication occurred and in granting a permanent injunction based on that finding is not against the clear weight of the evidence, and we therefore affirm the decision of the trial court.

¶ 21 **AFFIRMED.**

RAPP, C.J., and FISCHER, P.J., concur.